Slip Op. 19-9

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TOSÇELIK PROFIL VE SAC ENDÜSTRISI A.Ş. and ERBOSAN ERCIYAS BORU SANAYI VE TICARET A.S.,<br><br>　　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant. | Before: Leo M. Gordon, Judge<br><br>Consol. Court No. 17-00255 |

**<u>Opinion and Order</u>**

[Commerce's <u>Final Results</u> sustained in part; remanded in part.]

Dated: January 18, 2019

<u>David L. Simon</u>, Law Office of David L. Simon of Washington, DC, for Plaintiff Tosçelik Profil ve Sac Endüstrisi A.Ş.

<u>Irene H. Chen</u>, Chen Law Group, LLC of Rockville, MD, for Plaintiff Erbosan Erciyas Boru Sanayi ve Ticaret A.S.

<u>Elizabeth A. Speck</u>, Senior Trial Counsel, Commercial Litigation Branch, U.S. Department of Justice of Washington, DC, for Defendant United States. With her on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Franklin E. White, Jr.</u>, Assistant Director. Of counsel was <u>Saad Y. Chalchal</u>, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

<u>Roger B. Schagrin</u> and <u>John W. Bohn</u>, Schagrin Associates of Washington, DC, for Defendant-Intervenor Wheatland Tube Co.

Gordon, Judge: This action involves the final results of the 2015 administrative review conducted by the U.S. Department of Commerce ("Commerce") of the

countervailing duty ("CVD") order on circular welded carbon steel pipes and tubes from Turkey, published as <u>Welded Carbon Steel Pipes and Tubes from Turkey</u>, 82 Fed. Reg. 47,479 (Dep't of Commerce, Oct. 12, 2017) (final results admin. review) ("<u>Final Results</u>"); <u>see also</u> accompanying Issues and Decision Memorandum, C-489-502, (Dep't of Commerce Oct. 4, 2017), <u>available at</u> https://enforcement.trade.gov/frn/summary/turkey/2017-22069-1.pdf (last visited this date) ("<u>Decision Memorandum</u>").

Before the court are the motions for judgment on the agency record of Plaintiffs Tosçelik Profil ve Sac Endüstrisi A.Ş. ("Tosçelik") and Erbosan Erciyas Boru Sanayi ve Ticaret A.S. ("Erbosan"). <u>See</u> Mot. of Pl. Tosçelik for J. on the Agency R., ECF No. 27[1] ("Tosçelik Br."); Mem. in Supp. of. Pl. Erbosan's Rule 56.2 Mot. for Summ. J., ECF No. 29 ("Erbosan Br."); <u>see also</u> Def.'s Resp. Opp. Pls.' Rule 56.2 Mots. for J. on the Agency R., ECF No. 31 ("Def.'s Resp."); Mem. of Def.-Intervenor Wheatland Tube Co. in Resp. to Pls.' Rule 56.2 Mots. for J. on the Agency R., ECF No. 33; Reply Br. of Pl. Tosçelik, ECF No. 35 ("Tosçelik Reply"); Reply Br. of Erbosan, ECF No. 37 ("Erbosan Reply"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c) (2012).

For the reasons that follow, the court sustains Commerce's determinations for Tosçelik's hot-rolled steel ("HRS") issues, and remands Commerce's determination regarding Erbosan's no shipment certification for further consideration.

---

[1] All citations to parties' briefs and the agency record are to their confidential versions unless otherwise noted.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2018). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2018).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–45 (1984) governs judicial review of

Commerce's interpretation of the antidumping statute. See United States v. Eurodif S.A., 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

## II. Discussion

## A. Tosçelik's Domestic Sales of HRS

During the administrative review, Commerce examined whether a public authority in Turkey, Eregli Demir ve Çelik Fabrikalari T.A.S. Esas Sözlesmesi ("Erdemir"), provided Tosçelik with hot-rolled steel ("HRS") for less than adequate remuneration. Commerce's regulation, 19 C.F.R. § 351.511(a)(2), sets forth the basis for identifying appropriate market-determined benchmarks for measuring the adequacy of remuneration for government-provided goods or services. See 19 C.F.R. § 351.511(a)(2). Under that provision, Commerce will "normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question," which could include "prices stemming from actual transactions between private parties." Decision Memorandum at 14 (citing § 351.511(a)(2)). The regulation further specifies that in the comparison Commerce must consider "factors affecting comparability" (e.g., product similarity, quantities sold, whether they are imported or auctioned, etc.). Id. Additionally, Commerce's benchmark under § 351.511(a) must include "delivery charges and import duties" so that the comparison price reflects the price "that a firm actually paid or would pay if it imported the product." 19 C.F.R. § 351.511(a)(2)(iv).

In the preliminary results Commerce determined that Tosçelik's reported prices for domestic and imported HRS purchases from private suppliers "can serve as tier one benchmarks." See Decision Memorandum accompanying Circular Welded Carbon Steel Pipes and Tubes from Turkey, 82 Fed. Reg. 16,994 (Dep't of Commerce Apr. 7, 2017) (Prelim. results) ("Preliminary Decision Memorandum"). Accordingly, Commerce "used [Tosçelik's] actual domestic and import prices for HRS to calculate the benefit from [its] purchases of HRS from Erdemir … during the [period of review ("POR")]." Id.

In its administrative case brief Tosçelik argued that Commerce should calculate the benchmark under § 351.511(a)(2)(i) using Tosçelik's domestic sales of HRS (i.e., compare the prices Tosçelik paid to Erdemir for HRS with the prices at which Tosçelik sold HRS to private customers). See Decision Memorandum at 14 (summarizing case brief arguments). The petitioner, Wheatland Tube Company, responded that use of Tosçelik's HRS sales data would result in a circular comparison by trying to determine whether the price Tosçelik paid for HRS from Erdemir was subsidized by comparing that price to a price that was also subsidized. Id. at 15.

Commerce sidestepped the issue somewhat by determining that it could not identify the delivery terms among Tosçelik's sales data:

> We do not reach the issue of whether the statute, the Department's regulations, and case precedent allows the Department the option to use respondent's sales of an input to measure the adequacy of remuneration for that input, because as explained below, we determine that our record lacks information regarding the Tosçelik Companies' sales such that they are not useable tier-one benchmarks in this review. . . .

> . . .
>
> We have reviewed the Tosçelik Companies' HRS sales data, and find that the Tosçelik Companies' HRS sales data do not specify whether the sales reported are on a delivered or free on board (f.o.b.) basis. Were Tosçelik Companies' sales made on a f.o.b. basis, the Department would be required to adjust those prices under its regulations to achieve an apples-to-apples comparison with its purchased HRS prices. As such, even if we were to find that the Tosçelik Companies' proposed benchmark was permissible under 19 CFR 351.511(a)(2)(i), we would lack the information required to ensure a comparable benchmark, as required under 19 CFR 351.511(a)(iv). Thus, we find that the benchmark proposed by the Tosçelik Companies—i.e., the prices at which the Tosçelik Companies sold HRS to other private parties—is not a viable benchmark on this record.

Decision Memorandum at 15–16. Tosçelik challenges as unreasonable Commerce's finding that Tosçelik's HRS sales data do not specify delivery terms (whether they are on a delivered or free on board ("FOB") basis). Tosçelik Br. at 6–8. Tosçelik argues that its domestic sales of HRS were made on a delivered basis. Id. Tosçelik references a worksheet as support, which has three separate columns—one for total weight, one for total value, and one for freight-adjusted value. Id. (citing Tosçelik Sales Worksheet, CD[3] 193). According to Tosçelik the presence of the freight-adjusted column confirms that its domestic sales were made on a delivered basis. Tosçelik Br. at 7.

Defendant has a compelling counter-argument. Defendant explains that Tosçelik confirmed that it made some export sales on an FOB basis, and that Tosçelik reported its

---

[3] "CD" refers to a document in the confidential administrative record, which is found in ECF No. 19-4, unless otherwise noted. "PD" refers to a document in the public administrative record, which is found in ECF No. 19-5, unless otherwise noted.

export sales in the same format as its domestic sales—one column for total weight, one column for total value, and one for freight-adjusted value—meaning the presence of the freight-adjusted column does not itself confirm Tosçelik's delivery terms as Tosçelik argues. <u>See</u> Def.'s Resp at 10. (citing Tosçelik's Case Brief and Tosçelik Sales Worksheet).

In its reply brief Tosçelik acknowledges the weakness of its argument by attempting to introduce a <u>new</u> fact that it failed to establish on the administrative record: an alleged "common practice in the Turkish domestic market" of making sales on a delivered basis. <u>See</u> Tosçelik Reply at 12. One might infer such a general practice from the limited number of Turkish HRS transactions with clear delivery terms on the administrative record: (1) Tosçelik's purchases of HRS from Erdemir are on a delivered basis, (2) Tosçelik's purchases of HRS from other Turkish producers are on a delivered basis, and (3) Tosçelik's imports of HRS are on a delivered basis. The administrative record, however, does not mandate such an inference, especially because Tosçelik never informed Commerce of the practice. All that a reasonable mind may definitively conclude from the administrative record is that Tosçelik's <u>purchases</u> of HRS identify delivery terms whereas Tosçelik's <u>sales</u> of HRS do not. It was therefore reasonable, if not correct, for Commerce to conclude that it could not determine the delivery terms of Tosçelik's <u>sales</u> of HRS.

### B. Tosçelik's Purchases of HRS

Tosçelik argues that Commerce should have excluded from its benchmark calculation certain purchases of HRS that involved a distinct grade of allegedly non-

comparable HRS. See Tosçelik Br. at 10–19. Tosçelik though did not record the grade of

its HRS purchases, and had to acknowledge in its administrative case brief that in another

proceeding, OCTG from Turkey, Commerce did not consider steel grades in its

benchmark analysis because the record did not reflect the grades purchased or the

grades in the dataset used for the benchmark. Decision Memorandum at 17 (summarizing

Tosçelik's arguments in its case brief). Without direct evidence of the grade of its HRS

purchases, Tosçelik had to rely on indirect evidence to try and establish that some of its

HRS purchases were an alleged non-comparable grade for the benchmark. Tosçelik tried

to argue that the alleged grade difference is revealed through (1) disparate pricing within

the benchmark database (a higher price and a lower price), and (2) the fact that Tosçelik,

as supplier to a major pipeline project, was buying large volumes of higher priced HRS.

Id. Tosçelik offered an interpretation of its product catalog from which one might infer the

grade differences of its HRS purchases. Commerce was not persuaded and did not

exclude the HRS purchases from its benchmark calculation. Id. at 17–19.

Not much need be said here other than that the court does not believe the

administrative record requires a reasonable mind to draw Tosçelik's hoped-for inference

about the non-comparability of its HRS purchases. Tosçelik implicitly concedes the

weakness of its opening brief arguments by yet again raising a new argument in its reply

brief—that Commerce made a similar exclusion for another respondent. Tosçelik Reply

at 7–11. Leaving aside the problems of raising arguments for the first time in one's reply

brief, the court notes that Tosçelik's argument about the other respondent does not have

Tosçelik's intended persuasive effect, quite the opposite. Rather than demonstrating

alleged arbitrary treatment of similarly situated parties, Tosçelik instead highlights that the other respondent made a more rigorous and persuasive evidentiary proffer, which earned that other respondent the exclusion of certain noncomparable purchases of HRS from the benchmark. See id. The good news for Tosçelik is it now has an approach that it can emulate to better develop the administrative record for future administrative reviews. As for the instant review, the court sustains as reasonable Commerce's treatment of Tosçelik's HRS purchases in the benchmark calculation.

### C. Erbosan's No Shipment Certification

Erbosan challenges Commerce's denial of its no shipment certification. Commerce denied the no shipment certification based on U.S. Customs and Border Protection ("CBP") information demonstrating that Erbosan's subject merchandise entered the United States during the POR. The record confirms this fact. See Def.'s Resp. at 26 (citing record evidence of entries of Erbosan's subject merchandise). Erbosan argued in its administrative case brief that other than a test shipment, "[i]t made no other shipment itself, and it does not know or have reason to know that any of its domestic or third country customers of subject merchandise subsequently exported or resold Erbosan's merchandise to the United States during the POR. Its understanding is that no such transshipments were made." See Erbosan Administrative Case Brief at 4, CD 219. The POR entries of Erbosan's subject merchandise appear to involve exportation to the United States by a third country purchaser of Erbosan's merchandise. In any event, Commerce did not address Erbosan's contention that it did not know or have reason to know of any transshipments of its subject merchandise to the United States during

the POR. Commerce simply concluded "that record evidence contradicts Erbosan's assertions of no shipments, and demonstrates that subject merchandise produced by Erbosan entered the United States during the POR." <u>Decision Memorandum</u> at 19. The statute requires Commerce to provide "an explanation of the basis for its determination that addresses relevant arguments made by interested parties." 19 U.S.C. § 1677f(i)(3)(A). The court might infer from Commerce's decision that Erbosan's knowledge (actual or constructive) about any transshipments is simply irrelevant in the CVD context. The Government argues as much in its brief.  Def.'s Resp. at 34–35. Erbosan counters that its knowledge matters. Erbosan Reply at 9–12. Commerce should address this issue in the first instance prior to consideration by the court. The court will therefore remand this issue to Commerce to address whether Erbosan's knowledge of U.S. entries of its subject merchandise is relevant in the CVD context.

### III. Conclusion

Accordingly, it is hereby

**ORDERED** that this action is remanded to Commerce to address whether Erbosan's knowledge of U.S. entries of its subject merchandise is relevant in the CVD context; it is further

**ORDERED** that  the <u>Final Results</u> are sustained with respect to Commerce's treatment of Tosçelik's HRS issues in calculating the HRS benchmark;

**ORDERED** that Commerce shall file its remand results within 45 days of the end of the Government shutdown; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.


_____/s/ Leo M. Gordon_____
Judge Leo M. Gordon


Dated: January 18, 2019
       New York, New York